[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10416

_____

ROBERT FRANKLYN LODGE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A043-215-757

_____

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and HULL, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

We *sua sponte* vacate our original opinion and substitute in its place the following opinion.

This petition for review challenges the constitutionality of a federal law about derivative citizenship. Robert Franklyn Lodge, a native and citizen of Jamaica, was born out of wedlock. Lodge's mother abandoned him, and his father moved to the United States and became a naturalized citizen. Lodge's father later brought him here as a lawful permanent resident. After Lodge was convicted of aggravated felonies, the Department of Homeland Security sought to remove him. Lodge argued that he had derived citizenship from his father under a since-repealed statute. The immigration judge ordered Lodge removed to Jamaica, and the Board of Immigration Appeals dismissed Lodge's appeal. Lodge argues that the former statute discriminated against unmarried fathers based on sex and against black children based on race. He asks us to declare him a citizen on the ground that the statute, cured of its constitutional defects, would have permitted his father to transmit citizenship to him. Yet Lodge would not have derived citizenship from his father even under a version of the statute cured of its alleged constitutional defects. Because we cannot grant Lodge the remedy he seeks, we deny his petition for review and deny as moot his motion to transfer.

## I. BACKGROUND

Born in 1979, Robert Franklyn Lodge is a native and citizen of Jamaica. His father, Robert Francis Lodge, was born in Jamaica and became a naturalized citizen of the United States in 1989. And Lodge's mother, Lorna Wyndham, has never been a citizen of the United States. Lodge's parents never married. But their names appear on Lodge's "birth registration form" as his father and mother.

Lodge's mother abandoned him when he was a child. She left Jamaica to reside in London. Lodge's father became his sole "guardian" and "provide[d] everything" for him. He "maintained a continuing and close relationship" with Lodge, "support[ing] him fully and completely." Lodge's father brought Lodge to the United States, where he was admitted as a lawful permanent resident in 1992.

The Department of Homeland Security began removal proceedings against Lodge after he was convicted of aggravated felonies in 2016. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Lodge argued before the immigration judge that he was a citizen of the United States. The Department responded that Lodge was not a citizen.

The immigration judge found that Lodge was not a citizen of the United States. When Lodge's father naturalized and Lodge became a lawful permanent resident, the Immigration and Nationality Act provided several pathways to derivative citizenship for children born abroad to alien parents. *See* 8 U.S.C. § 1432(a) (1994), *repealed by* Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103, 114 Stat. 1631, 1632 (2000). Although Lodge would have

derived citizenship under the Child Citizenship Act of 2000, which repealed and replaced those pathways, that new law is not retroactive, and Lodge did not satisfy its terms on its effective date. *See* 8 U.S.C. § 1431(a); *United States v. Arbelo*, 288 F.3d 1262, 1263 (11th Cir. 2002). The immigration judge explained that Lodge did not meet the statutory conditions for naturalization under former section 1432(a). The immigration judge rejected Lodge's requests for withholding of removal and for relief under the Convention Against Torture and ordered him removed to Jamaica. Lodge appealed to the Board of Immigration Appeals, which dismissed his appeal.

Lodge petitioned this Court *pro se* for relief. He argued that the second clause of section 1432(a)(3)—which allowed naturalized unmarried mothers, but not naturalized unmarried fathers, to transmit citizenship to their children when other conditions were met—violated the equal protection guarantee of the Due Process Clause of the Fifth Amendment because it discriminated based on sex and race. We dismissed the appeal for want of prosecution but reinstated it after Lodge obtained counsel.

Lodge moved to transfer the proceeding to the Northern District of Georgia. *See* 8 U.S.C. § 1252(b)(5)(B). He argued that adjudication of his argument about race discrimination requires fact-intensive inquiry into the legislative purpose and the effect of the second clause of section 1432(a)(3), and he argued that this Court may not decide issues of material fact about nationality. *See id.* We carried the motion with the case.

## II. STANDARD OF REVIEW

We review *de novo* our subject-matter jurisdiction and Lodge's constitutional challenges. *Clement v. U.S. Att'y Gen.*, 75 F.4th 1193, 1198 (11th Cir. 2023); *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1172 (11th Cir. 2012).

## III. DISCUSSION

We proceed in two parts. We first explain that Lodge has Article III standing to assert his constitutional challenges. We then explain that Lodge is not entitled to the remedy he seeks because he would not derive citizenship from his father even under a version of the second clause of section 1432(a)(3) that did not classify based on sex.

### A. Lodge Has Article III Standing.

We may consider Lodge's constitutional challenges only if he has standing to assert them. *See TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1262 (11th Cir. 2023). As the party invoking federal jurisdiction, Lodge must prove that he has suffered an injury in fact that is fairly traceable to the allegedly unlawful conduct of the Attorney General and which a favorable decision would likely redress. *See id.* Because Lodge has satisfied that burden, he has Article III standing to challenge the constitutionality of the sex classification in the second clause of section 1432(a)(3).

Lodge has suffered an injury in fact. He is subject to removal because he was convicted of aggravated felonies. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). The "risk of removal" is "sufficient to create an

actual or imminent injury" under Article III. *Gonzalez v. United States*, 981 F.3d 845, 852 (11th Cir. 2020).

That injury is fairly traceable to the challenged action of the Attorney General. The immigration judge, acting for the Attorney General, denied Lodge's claim that he derived citizenship from his father under section 1432(a)(3). Lodge challenges the lawfulness of the statutory provision that he alleges was the "ultimate basis" for that denial. Citizenship is a defense to removal. *See* 8 U.S.C. § 1227(a) (only aliens may be removed). So the allegedly unlawful denial of Lodge's citizenship claim was a cause of his removal.

A favorable decision would redress Lodge's injury. A favorable decision is a favorable judgment. *See Haaland v. Brackeen*, 143 S. Ct. 1609, 1640 (2023). Lodge seeks a judgment declaring that he is a citizen of the United States. A judgment granting that relief would give Lodge "legally enforceable protection" against his injury, *see id.* at 1639, because the Attorney General would need to cancel the order of removal.

### B. Lodge Would Not Derive Citizenship From His Father Even Under a Cured Version of Section 1432(a)(3).

Lodge raises two constitutional challenges. First, he argues that the sex classification in the second clause of former section 1432(a)(3) discriminated unlawfully based on sex. Second, he argues that the same classification discriminated based on race because it was intended to, and did, exclude him from deriving citizenship from his father on the ground that Lodge is black.

Our analysis begins with the statutory scheme. Former section 1432(a) automatically conferred citizenship on a "child born outside of the United States of alien parents . . . upon fulfillment of" three conditions. 8 U.S.C. § 1432(a). The first condition, which appeared in the second clause of section 1432(a)(3), required "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." *Id.* § 1432(a)(3). The second condition required that "[s]uch naturalization take[] place while such child is unmarried and under the age of eighteen years." *Id.* § 1432(a)(4). And the third condition required that "[s]uch child . . . begin[] to reside permanently in the United States while under the age of eighteen years." *Id.* § 1432(a)(5).

Lodge acknowledges that he did not derive citizenship under the statute. Although he began to reside permanently in the United States before he turned 18, and although he was unmarried and under 18 when his father became a naturalized citizen, the second clause of section 1432(a)(3) provided derivative citizenship only if his *mother*, not his father, naturalized. His mother never did so.

So Lodge challenges the constitutionality of the second clause. When the conditions in sections 1432(a)(3), 1432(a)(4), and 1432(a)(5) were satisfied, he argues, the second clause of section 1432(a)(3) "confer[red] automatic citizenship on the child of an unmarried mother, but not of a similarly situated unmarried father." Lodge argues that the sex classification in the second clause was the basis for denial of his defense of citizenship. He maintains

that the clause unconstitutionally discriminated based on sex because it treated unmarried mothers and unmarried fathers unequally based solely on the "outmoded stereotype[]" that "an unwed father is more likely to be 'out of the picture' than an unwed mother." And he contends that the "disparate treatment of unmarried fathers" is unconstitutional also because the second clause was enacted with the purpose, and had the disparate effect, of limiting the number of black children who could derive citizenship.

Lodge invokes third-party standing to assert his sex-discrimination claim, and we need not decide whether he may do so. "Because [the second clause of section 1432(a)(3)] treats sons and daughters alike, [Lodge] does not suffer discrimination on the basis of *his* [sex]." *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1688 (2017). Lodge "complains, instead, of [sex]-based discrimination against his father." *Id.* That is, Lodge argues that the sex classification in the second clause "clearly injure[s]" "*his father*," and that he—Lodge—has third-party standing "to assert his [father's] constitutional claims." A litigant ordinarily may not assert the right of a third party. *See Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006). But a petitioner sometimes may challenge a sex classification in a statute governing derivative citizenship to "vindicate his father's right to the equal protection of the laws." *Sessions*, 137 S. Ct. at 1689. Because, as we explain below, Lodge is not entitled to the remedy he seeks even if he does have third-party standing to assert his father's right to equal protection, we assume without deciding that Lodge has third-party standing. *See United States v. Blake*, 868 F.3d 960, 970 (11th Cir. 2017) (third-party standing is not

jurisdictional and may be "bypass[ed]" when deciding it "will not affect the result").

Lodge argues that the sex classification in the second clause of former section 1432(a)(3) was the "ultimate basis" of the immigration judge's denial of his defense that he derived citizenship under section 1432(a). This assertion underpins both of Lodge's challenges to the second clause. Each discrimination claim targets the sex classification because, Lodge says, the classification is unlawful on two grounds. So the "cure" for both "the sex- and race-based discrimination" in the clause, according to Lodge, is the same: "allow fathers to bestow derivative citizenship on their nonmarital children" under former section 1432(a)(3) the same way mothers could.

Lodge's equal protection challenges fail because, since his mother never naturalized, the sex classification did not affect the immigration judge's denial of Lodge's citizenship claim. The second clause of section 1432(a)(3) provided a pathway to derivative citizenship for a child born abroad to alien parents upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." 8 U.S.C. § 1432(a)(3). Because his mother never naturalized, Lodge did not derive citizenship under this provision. But he would not have become a citizen even under a sex-neutral version of the second clause. A sex-neutral version of the second clause of section 1432(a)(3) would have conferred citizenship upon "the naturalization of one parent if the child was born out of wedlock *and*

*the paternity or maternity of the other parent has not been established.*" Or it would have conferred citizenship upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation *or the naturalization of the father if the child was born out of wedlock and the maternity of the child has not been established.*" Either way, because Lodge's maternity *has* been established, he would not have derived citizenship from his father under a version of the second clause that treated mothers and fathers the same.

In other words, that the immigration judge rejected Lodge's defense of citizenship had nothing to do with the sex classification. Lodge did not "*suffer from* a [sex]-based distinction" in the second clause. *See Roy v. Barr*, 960 F.3d 1175, 1182 (9th Cir. 2020) (emphasis added). It follows that his claims "do[] not implicate equal protection." *See Ayton v. Holder*, 686 F.3d 331, 338 (5th Cir. 2012). They instead "fail[] at the outset" because we cannot grant Lodge the remedy he seeks no matter what we decide about the constitutionality of the sex classification. *See Roy*, 960 F.3d at 1183.

Lodge insists that the sex classification does violate his and his father's rights. He would have us remedy its alleged constitutional defects by "allow[ing] the child of a similarly situated father"—that is, allowing Lodge—"to obtain the same benefits" that the clause grants to children of naturalized, unmarried mothers. In Lodge's view, a father "similarly situated" to a naturalized mother whom the second clause benefits would be a father who "has legitimated the child and obtained exclusive legal custody" over him. So

Lodge proposes that we amend the second clause to confer automatic citizenship—assuming that the conditions in sections 1432(a)(4) and 1432(a)(5) are met—upon the "naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation *or the naturalization of the father if the child was born out of wedlock and the child is in the legal custody of the father*."

That proposed amendment "does not simply correct a [sex] disparity—it rewrites the statute entirely," and this fact underscores the "infirmity of [Lodge's] equal-protection claim[s]." *See id.* at 1182–83 (rejecting a similar proposed cure of the sex classification in the second clause of section 1432(a)(3)). If we were to extend Lodge's logic to the statute as it was written, the second clause would have allowed naturalized mothers to transmit citizenship if the child were born out of wedlock *and the child were in the legal custody of the mother*. But the second clause instead allowed mothers to transmit citizenship "if the child is born out of wedlock *and the paternity of the child has not been established by legitimation*." 8 U.S.C. § 1432(a)(3). These italicized conditions are not the same. A child can be in his mother's legal custody even if his father has legitimated him. Whether a child is in his mother's custody says nothing about whether the child's paternity has been established. For the same reason, whether a child is in his *father's* custody says nothing about whether the child's *maternity* has been established. And that the child's maternity has been established does not tell us whether he is in his father's custody.

Lodge misses the point when he argues that a paternal "custodial relationship" is "on all fours with the maternal relationship described in" the second clause of section 1432(a)(3) because "the unwed mother is presumed to have sole legal custody" over the child. The second clause does not allow transmission of citizenship by the mother with sole legal custody if paternity has been established by legitimation. Likewise, that a father might have sole legal custody would be, on the plain terms of what would be the sex-neutralized statute, only half the story; establishment of maternity would be the other half.

We agree with the government that it is "no coincidence" that Lodge's proposed amendment would, instead of removing the sex classification from the second clause, "effectively render retroactive the derivative citizenship provisions" of the Child Citizenship Act. Under that law, which became effective in 2001, a child born abroad derived citizenship when, before he turned 18, he "resid[ed] in the United States" as a lawful permanent resident "in the legal and physical custody of [his] citizen parent." 8 U.S.C. § 1431(a)(1)–(3); *Arbelo*, 288 F.3d at 1262. Lodge appears to have satisfied those conditions. But the Act is not retroactive. *Arbelo*, 288 F.3d at 1263. And the pathway to citizenship that depends on the second clause of former section 1432(a)(3) is not, as Lodge contends, simply the new law plus an unlawful sex classification: the second clause of former section 1432(a)(3) never mentions custody.

Lodge retorts that legitimation, as that term is used in the second clause, is an "inherently sex-based" concept, and that his

entitlement to relief cannot turn on whether he satisfies an "inherently [sexist] part of an unconstitutional test." This objection misfires. Although legitimation is often considered a mechanism for establishing paternity, not maternity, *see Schreiber v. Cuccinelli*, 981 F.3d 766, 774 (10th Cir. 2020); *Matter of Cross*, 26 I. & N. Dec. 485, 489 n.5, 492 (B.I.A. 2015), "both fathers and mothers can legitimate a child after the child's birth," *Roy*, 960 F.3d at 1183 (emphasis omitted). Yet most children are necessarily legitimated by their mothers by being born to them in a place where that fact is officially recorded. In any event, the removal of the sex classification from the second clause of section 1432(a)(3) would not need to involve the concept of establishment of maternity *by legitimation*.

Lodge is also wrong to suggest that maternity need never be established. Indeed, the authorities that he cites undermine his argument. The Supreme Court has stated, for example, that "[t]he mother's status is documented *in most instances*"—not all—"by the birth certificate or hospital records and the witnesses who attest to her having given birth." *Nguyen v. INS*, 533 U.S. 53, 62 (2001) (emphasis added). Another decision states that "[e]stablishing maternity is *seldom*"—not never—"difficult." *Lalli v. Lalli*, 439 U.S. 259, 268 (1978) (emphasis added). And the Ninth Circuit has stated that "*in most cases*"—not all—"there is a reasonable expectation that the illegitimate child's maternal descent will be easier to trace than her paternal descent." *Ablang v. Reno*, 52 F.3d 801, 805 (9th Cir. 1995) (emphasis added). These authorities do not speak in categorical terms. That a child's maternity has not been established is, even if improbable, "not impossible." *Roy*, 960 F.3d at 1182. "[A]n

unmarried mother could give birth at her home and then leave the baby on the father's doorstep." *Id.* The father might confirm his own paternity with a test but not know the identity of the mother. *Id.* Lodge misses that the establishment of maternity, like the establishment of paternity by legitimation, is a legal act that attests a biological fact; it is not the biological fact itself. Were it otherwise, establishment of paternity would be no more meaningful a concept than establishment of maternity. In short, the law does not always know that a particular mother has given birth.

The sex classification in the second clause of former section 1432(a)(3) did not contribute to Lodge's injury. The classification, as applied to Lodge by the immigration judge in the government action that Lodge challenges, did not implicate the constitutional rights that Lodge asserts. Because Lodge cannot obtain relief in any event, we do not address whether the sex classification would survive heightened scrutiny, and we need not decide whether Lodge has third-party standing to assert his father's right to equal protection. We also need not address Lodge's motion to transfer. *See* 8 U.S.C. § 1252(b)(5)(B). Nor do we decide whether Lodge qualified as a "child" under section 1432(a)(3). *See* 8 U.S.C. § 1101(c)(1) (1994) (defining "child" in section 1432(a)(3) to include a child born to unmarried parents only if he was legitimated under certain conditions).

## IV. CONCLUSION

We **DENY** Lodge's petition for review and **DENY** as moot his motion to transfer.