[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10300

Non-Argument Calendar

_____

KELVIN OSVALDO SILVA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A041-421-501

_____

Before JORDAN, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Kelvin Osvaldo Silva petitions this Court to review the BIA's order affirming the denial of his application to terminate removal proceedings. Silva argues in his petition that the former version of 8 U.S.C. § 1432(a)(3) applicable to his case, which confers automatic citizenship on children born outside the United States to alien parents who meet certain qualifications, discriminates based on gender and race in violation of the Fifth Amendment. As a remedy for the alleged discrimination, Silva argues he is entitled to United States citizenship and the termination of his removal proceedings. Silva's argument is foreclosed by this Court's recent decision in *Lodge v. United States Attorney General*, 92 F.4th 1298 (11th Cir. 2024), denying a factually indistinguishable petition. Accordingly, we deny Silva's petition pursuant to *Lodge*.

## BACKGROUND

Silva, a native and citizen of the Dominican Republic, entered the United States in 1988 as a lawful permanent resident after his father obtained U.S. citizenship.[1] Silva was 11 years old at the time of his entry, and he lived as a lawful permanent resident in the United States until 2011, when he was charged in the Western District of North Carolina with four felony drug offenses. He pled

---

[1] The record indicates that Silva's father died in 1993, when Silva was 17 years old.

guilty to conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 841 (b)(1)(A) and conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(B) in exchange for dismissal of the remaining two counts, and the district court sentenced him to 127 months in prison in 2013. Silva was released from prison in 2019, after having his sentence reduced to 120 months.

Following his release from prison, the Department of Homeland Security ("DHS") served Silva with a Notice to Appear ("NTA"). The NTA stated that Silva was not a citizen of the United States, and it charged him with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been convicted of an aggravated felony as defined in the Immigration and Nationality Act ("INA") and an offense relating to illicit trafficking in a controlled substance as described in the Controlled Substances Act.

Silva had a hearing before an IJ in August 2019, during which he asserted a claim of citizenship and contested his removability. Silva admitted during the hearing that he had been convicted of felony drug offenses in 2013, while present in the United States as a lawful permanent resident. But he claimed that, prior to committing the offenses, he had derived U.S. citizenship through his father under 8 U.S.C. § 1432(a), the relevant version of which states that a child born outside the United States to alien parents becomes a citizen of the United States upon fulfillment of the following conditions:

(1)    The naturalization of both parents; or

4                        Opinion of the Court                    21-10580

(2)     The naturalization of the surviving parent if one of
        the parents is deceased; or

(3)     The naturalization of the parent having legal custody
        of the child when there has been a legal separation of
        the parents or the naturalization of the mother if the
        child was born out of wedlock and the paternity of
        the child has not been established by legitimation[.]

8 U.S.C. § 1432(a) (1988) (repealed).[2] Silva claimed he qualified for citizenship under the third paragraph, § 1432(a)(3), and based on that claim he moved to terminate the removal proceedings against him.

The IJ denied Silva's motion to terminate, sustained the removal charge, and ordered Silva removed to the Dominican Republic. The IJ found that Silva failed to show he satisfied the requirements of derivative citizenship under § 1432(a)(3) because, although he submitted evidence showing that his father naturalized in 1988, he did not submit evidence to demonstrate that his parents ever legally married or separated or that his mother ever naturalized.

---

[2] The statute also requires that naturalization take place while the child is under 18 years old, and that the child be in the United States as a lawful permanent resident at the time of the naturalization of the parent last naturalized under clause (1) or the parent naturalized under clause (2) or (3). *See* 8 U.S.C. § 1432(a)(4) and (5) (1988). However, those requirements are not at issue here.

Silva appealed to the BIA, arguing that his parents should be considered to have legally married and separated under Dominican Republic law and custom, and asserting a Fifth Amendment equal protection challenge to § 1432(a)(3) based on its alleged disparate treatment of the children of unwed naturalized mothers and the children of similarly situated unwed fathers.  The BIA rejected Silva's argument and affirmed the IJ's decision.  Specifically, the BIA agreed with the IJ that Silva did not derive citizenship from his father under the first clause of § 1432(a)(3) because his parents never married—and thus never legally separated—within the meaning of that provision.  As to Silva's equal protection claim challenging the second clause of § 1432(a)(3), the BIA stated that it did not have authority to adjudicate the constitutional challenge.  Accordingly, the BIA dismissed Silva's appeal.

Silva filed a petition in this Court for judicial review of the BIA's decision, and he asked that the petition be transferred to the district court to resolve purported issues of fact as to whether 8 U.S.C. § 1432(a)(3) had the discriminatory purpose of limiting the number of Black people who may derive U.S. citizenship under that statute or a racially disparate impact, in violation of the Fifth Amendment.  *See* CM/ECF for 11th Cir., Case No. 20-13916, "*Silva I*" at Doc. 11.  While that request was pending, the Government filed a motion to supplement the record and remand the case to the BIA so it could consider inadvertently omitted documents and issue a decision on a complete record, which this Court granted.  *Id.* at Docs. 32, 33.  On remand, the BIA again dismissed Silva's appeal, agreeing with the IJ based on the supplemented record that Silva

did not derive citizenship from his father because his parents did not legally marry or separate within the meaning of § 1432(a)(3), and reiterating that it did not have authority to adjudicate Silva's constitutional challenges to § 1432(a)(3).

Silva subsequently filed the present petition for judicial review. In support of the petition, Silva argues that § 1432(a)(3) unconstitutionally discriminates based on sex because it confers automatic citizenship on the child of an unmarried mother but not on the child of a similarly situated father. According to Silva, the sex-based classification in § 1432(a)(3) does not serve any important governmental objective but is instead based on outdated gender stereotypes and the "untenable" assumption that an "unwed mother is the natural and sole guardian of a non-marital child." Silva also argues that § 1432(a)(3) discriminates based on race because it disparately impacts immigrant children in majority Black countries where non-marital unions are the dominant form of familial arrangement. Silva argues that this Court should remedy the constitutional defects by holding that he derived citizenship through his father under § 1432(a)(3).

Silva's petition was held in abeyance pending oral argument and a decision in *Lodge v. United States Attorney General*, 92 F.4th 1298 (11th Cir. 2024), a petition for review of a BIA decision in which the petitioner asserted the same constitutional arguments underlying Silva's petition. A panel of this Court recently issued a decision denying Lodge's petition. *See id.* Because the decision in *Lodge* appeared to require the denial of Silva's petition, the Court directed

him to show cause why his petition should not be denied pursuant to *Lodge*. Silva has responded to the show cause order , but his response fails to materially distinguish his case from *Lodge*. Accordingly, we deny Silva's appeal pursuant to *Lodge*.

## DISCUSSION

### I.    Standards of Review

This Court generally reviews constitutional challenges, such as the challenge asserted by Silva in his petition, *de novo*. *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1172 (11th Cir. 2012). The Court likewise reviews jurisdictional issues, including the threshold question of Article III standing, *de novo*. *Taylor v. Polhill*, 964 F.3d 975, 980 (11th Cir. 2020).

### II.    Standing

The parties have extensively briefed the question whether Silva has Article III standing to assert the constitutional challenges at issue in his petition. To establish standing, a litigant must prove he (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* The *Lodge* decision resolves the Article III standing issues raised by the briefing in this case. As the Court explained in *Lodge*, a petitioner's "risk of removal is sufficient to create an actual or imminent injury under Article III." *Lodge*, 92 F.4th at 1301 (quotation marks omitted). Moreover, the injury is fairly traceable to the "allegedly unlawful denial of [the petitioner's] citizenship claim, . . . a cause of [the] removal." *Id.* Finally, a favorable decision—that is, a decision declaring that the petitioner is a U.S.

citizen—would redress the injury because it would require cancellation of the order of removal and termination of the removal proceedings. *Id.* at 1301–02.

We note that if Silva's parents had legally married and separated, as he argued below, he would not have standing to challenge the constitutionality of the second clause of § 1432(a)(3) because he would derive citizenship from the first clause of that provision. Although Silva abandoned his legal marriage and separation argument by failing to discuss it in his petition, we briefly address the issue given its implications for standing—and thus jurisdiction—in this case. In short, the record supports the BIA's determination that there was no legal separation here, because Silva did not produce any documents showing that his parents ever legally married, and Silva's mother did not describe her relationship with his father as a marriage or civil union and she asserted that their relationship ended prior to Silva's birth. Because the record indicates that Silva was born to unmarried parents, only the second clause of former § 1432(a)(3) could apply to him. Thus, per *Lodge*, Silva has Article III standing to assert the constitutional arguments raised in his petition.

### III.    Denial of Silva's Petition Pursuant to *Lodge*

Silva challenges the constitutionality of the version of 8 U.S.C. § 1432(a)(3) that was in effect when his father naturalized in 1988. *See Levy v. U.S. Att'y Gen.*, 882 F.3d 1364, 1366 n.1 (11th Cir. 2018) (explaining that when an individual seeks to derive citizenship from naturalization, the BIA applies the law in effect when the

last material condition is met, such as the date of the citizen parent's naturalization). As discussed, the BIA determined that Silva does not satisfy former § 1432(a)(3) because he was born out of wedlock, his paternity was established, and he did not show that his mother naturalized. Silva now concedes the BIA was correct on this point, but he argues he nevertheless is entitled to citizenship under that statute as a remedy for its alleged constitutional defects.

Faced with an identical petition in *Lodge*, this Court held that the petition must be denied because the allegedly discriminatory sex-based classification in the second clause of § 1432(a)(3) did not affect the denial of citizenship. *See Lodge*, 92 F.4th at 1303. Again, the challenged language in § 1432(a)(3) grants citizenship to a child born outside the United States to alien parents upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation[.]" 8 U.S.C. § 1432(a)(3) (1988). Like Silva, Lodge argued this language "unconstitutionally discriminated based on sex because it treated unmarried mothers and unmarried fathers unequally based solely on the outmoded stereotype that an unwed father is more likely to be out of the picture than an unwed mother." *Lodge*, 92 F.4th at 1302 (alteration adopted and quotation marks omitted).[3] And also like Silva, Lodge argued the appropriate cure for the constitutional

---

[3] Lodge argued further, as Silva argues, that the sex-based classification was unconstitutional for the additional reason that it was "enacted with the purpose, and had the disparate effect, of limiting the number of black children who could derive citizenship." *Lodge*, 92 F.4th at 1302.

defect was to "allow fathers to bestow derivative citizenship on their nonmarital children under former [§] 1432(a)(3) the same way mothers could" and, thus, to grant him citizenship under § 1432(a)(3). *Id.* at 1303.

This Court held that Lodge was not entitled to the remedy he sought in his petition because "he would not have become a citizen even under a sex-neutral version" of the statute.[4] *Id.* As the Court explained:

> A sex-neutral version of the second clause of [§] 1432(a)(3) would have conferred citizenship upon "the naturalization of one parent if the child was born out of wedlock *and the paternity or maternity of the other parent has not been established.*" Or it would have conferred citizenship upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation *or the naturalization of the father if the child was born out of wedlock and the maternity of the child has not been established.*" Either way, because Lodge's maternity *has* been established, he would not

---

[4] The Court in *Lodge* noted that § 1432(a)(3) "treats sons and daughters alike" and so could not be said to discriminate against Lodge based on his sex, but rather arguably discriminated against Lodge's father. *See Lodge*, 94 F.4th at 1302 (quotation marks omitted). It assumed without deciding that Lodge had third-party standing to assert such a claim, and we likewise assume without deciding Silva has third-party standing to assert an equal protection claim on behalf of his father. *See id.* at 1303.

> have derived citizenship from his father under a version of the second clause that treated mothers and fathers the same.

*Id.* (quotation marks omitted and emphasis in original).

The same is true here. It is undisputed that Silva's maternity has been established, just as Lodge's was. Thus, Silva "would not have derived citizenship from his father under a version of the second clause [of § 1432(a)(3)] that treated mothers and fathers the same" any more than Lodge would have. *Id.* That being so, the IJ's rejection of Silva's citizenship defense "had nothing to do with the sex classification." *See id.* In short, Silva's constitutional claims "fail at the outset because we cannot grant [Silva] the remedy he seeks no matter what we decide about the constitutionality of the sex classification." *See id.* (quotation marks omitted).

As mentioned above, we gave Silva an opportunity to distinguish his case from *Lodge* when we lifted the abeyance order and ordered him to show cause why his petition should not be denied pursuant to *Lodge*. Silva responded to the show-cause order, but his response does not distinguish his case in any meaningful way. Indeed, the response is for the most part a restatement of the same arguments asserted in Silva's initial petition. Given the intervening decision in *Lodge*, these arguments are unsuccessful.

To the extent Silva attempts to draw any real distinctions between his case and Lodge's, his efforts fail. Silva argues his case is somehow different from Lodge's because of his race discrimination claim, but Lodge asserted an identical claim. *See Lodge*, 92 F.4th

at 1302 ("Lodge raises two constitutional challenges.  First, he argues that the sex classification in the second clause of former section 1432(a)(3) discriminated unlawfully based on sex.  Second, he argues that the same classification discriminated based on race because it was intended to, and did, exclude him from deriving citizenship from his father on the ground that Lodge is black.").

Silva also argues he would be a U.S. citizen under the sex-neutral version of § 1432(a)(3) hypothesized in *Lodge*, where a child can derive citizenship from his father if maternity is not established, because his mother abandoned him after his birth.  But again, the same was true for Lodge.  *See id.* at 1300 ("Lodge's mother abandoned him[.]").  Despite the abandonment, the Court held Lodge could not prevail under a sex-neutral version of § 1432(a)(3) because his maternity was established.  *See id.* at 1303 ("[B]ecause Lodge's maternity *has* been established, he would not have derived citizenship from his father under a version of the second clause that treated mothers and fathers the same." (emphasis in original)).  Similarly, it is undisputed here that Silva's maternity is established.

The only distinction we see between this case and *Lodge* is that Lodge's mother apparently never naturalized, whereas Silva's mother eventually naturalized after Silva turned 18, when he was too old to derive citizenship from her.[5]  This factual difference has

---

[5] Again, former § 1432(a) required that parental naturalization take place "while such child is under the age of eighteen years."  8 U.S.C. § 1432(a)(4) (1988).

21-10580                Opinion of the Court                13

no bearing on Silva's claim seeking to derive citizenship from his father, nor does it otherwise impact his derivative citizenship status, given Silva's age at the time his mother naturalized. As such, and because this case is materially indistinguishable from *Lodge*, we must deny Silva's petition.

## CONCLUSION

For the reasons stated above, Silva's petition is **DENIED**.